UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MARY LANZILLOTTA, suing individually on :
her own behalf and representatively on behalf of :    **MEMORANDUM AND ORDER**
a class of plaintiffs similarly situated,            :    19-cv-01465 (DLI)(LB)
                                                     :
       Plaintiff,    :
                                                     :
                                                     :
    -against-                    :
                                                     :
GEICO EMPLOYEES INSURANCE                            :
COMPANY, GEICO GENERAL INSURANCE :
COMPANY, GEICO INDEMNITY                             :
COMPANY, GEICO CASUALTY                              :
COMPANY, GEICO ADVANTAGE                             :
INSURANCE COMPANY, GEICO CHOICE                      :
INSURANCE COMPANY, GEICO SECURE                      :
INSURANCE COMPANY, GEICO COUNTY                      :
MUTUAL INSURANCE COMPANY, GEICO                      :
INSURANCE AGENCY INC.                                :
                                                     :
       Defendants.  :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

  On March 13, 2019, Plaintiff Mary Lanzillotta ("Plaintiff") commenced this putative class action against GEICO Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, GEICO County Mutual Insurance Company, GEICO Insurance Agency Inc. (collectively, "Defendants"), seeking damages and declaratory and injunctive relief for Defendants' alleged systemic underpayments of benefits for individuals injured in automobile accidents and insured by Defendants. *See*, Compl., Docket ("Dkt.") Entry No. 1.

  Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  *See*, Notice of Mot., Dkt. Entry No. 11; Decl. of Brian L. Bank ("Bank Decl."), Dkt. Entry No. 12; Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Def. Mem."), Dkt. Entry No. 13. Plaintiff opposed the motion.  *See*, Decl. of Dirk Marschhausen ("Marschhausen Decl."), Dkt. Entry No. 18; Pl's. Mem. of Law in Opp'n to Mot. to Dismiss ("Pl. Opp'n"), Dkt. Entry No. 19. Defendants filed a reply in support of their motion.  *See*, Suppl. Decl. of Brian L. Bank ("Bank Suppl. Decl."), Dkt. Entry No. 20; Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss ("Def. Reply"), Dkt. Entry No. 21.  After the motion to dismiss had been fully briefed, Plaintiff filed a letter with supplemental authority in support of her opposition, *See*, Letter, Dkt. Entry No. 22, to which Defendants did not respond.

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint, as well as documents that are integral to the Complaint, and are accepted as true for purposes of this decision.  *See*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013).  In support of her opposition, Plaintiff submitted exhibits, including a record of the insurance payments that Defendants issued to Plaintiff and e-mail correspondence between Plaintiff's counsel and the former General Counsel to the New York State Insurance Department regarding no-fault insurance.  *See*, Marschhausen Decl., Exs. 1, 10.

The Court considers the record of insurance payments because these insurance payments are the subject of the instant action and, thus, integral to the Complaint.  *See*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation

marks and citations omitted).

However, the Court will not consider the e-mail correspondence between Plaintiff's counsel and the former General Counsel to the New York State Insurance Department, as it is extrinsic to the pleadings. Where a party seeks to introduce material extrinsic to the pleadings on a motion to dismiss, the court "must either exclude the additional material and decide the motion on the pleadings alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material." *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp.2d 432, 442 (S.D.N.Y. 2004) (internal quotation marks and citations omitted); *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (citation omitted). Neither Plaintiff nor Defendants indicate that they seek to convert Defendants' motion to dismiss to a motion for summary judgment, and, therefore, the Court will not consider this e-mail correspondence. *See*, *United States Fire Ins. Co.*, 303 F. Supp.2d at 442 (declining to convert motion to dismiss to motion for summary judgment and accordingly not considering material extrinsic to the pleadings).

On August 27, 2016, Plaintiff was injured in a car accident. Compl. ¶ 23. At the time of the collision, Plaintiff was insured under an automobile insurance policy issued by Defendants (the "Policy"). *Id.* at ¶ 22. The Policy, in accordance with the requirements of the Comprehensive Motor Vehicle Reparations Act, N.Y. Ins. Law §§ 5101-09 (the "No-Fault Statute"), provided coverage of up to $50,000.00 in "Basic Economic Loss" and $5,000.00 in "Med Pay" for a total of $55,000.00. *Id.*; *Id.* at ¶ 25.

Following the accident, Plaintiff submitted a claim for "First Party Benefits" to Defendants. *Id.* at ¶ 23. At the time, Plaintiff was self-employed with average gross monthly earnings of $2,636.00. *Id.* at ¶ 24; Marschhausen Decl., Ex. 1. Defendants issued Plaintiff a claim payment of $51,445.21, which included: (1) $35,019.38 in First Party medical benefits; (2) $14,219.15 in

First Party wage benefits over a period of seven months; and (3) $2,206.68 in "Replacement Benefits." Compl. ¶ 26.

On April 18, 2017, having issued $51,445.21 in First Party Benefits, Defendants advised Plaintiff that she had exhausted her Basic Economic Loss and Med Pay coverages of $55,000.00. *Id.* at ¶ 27. Defendants reached this conclusion by accounting for $2,500.00 in lost earnings per month, and subtracting 20 percent of such lost earnings, or $500.00, from the total $55,000.00 in Basic Economic Loss and Med Pay for the seven months that Plaintiff received First Party wage benefits (for a total deduction of $3,500.00). *Id.* at ¶¶ 28, 29. Plaintiff asserts that Defendants instead should have accounted for only $2,000.00 in lost earnings per month and not applied the 20 percent deduction. *Id.* at ¶¶ 3-5, 28. Plaintiff contends that Defendants' purportedly improper calculation of First Party Benefits deprived Plaintiff of $3,554.79 in Basic Economic Loss benefits to which she was entitled. *Id.* at ¶ 30.

Plaintiff asserts four causes of action: (1) violation of the No-Fault Statute; (2) breach of contract; (3) violation of New York General Business Law § 349 ("GBL § 349"); and (iv) request for declaratory and injunctive relief. *Id.* at ¶¶ 33-49.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor.

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## DISCUSSION

**A.     Count I:  Alleged Violation of the No-Fault Statute**

Plaintiff asserts a cause of action for violation of New York's No-Fault Statute. *See*, Compl. ¶¶ 33-35.[1]  Under the No-Fault Statute and the regulations promulgated thereunder, automobile insurers are required to provide their insureds up to $50,000.00 in "Basic Economic Loss." *See*, N.Y. Comp. Codes R. & Regs. § 65-1.1; *See also*, *Gov't Emps. Ins. Co. v. Lexington Med. Diagnostic Servs., P.C.*, 2020 WL 1316644, at *3 (E.D.N.Y. Mar. 20, 2020).  As relevant here, Basic Economic Loss covers:  (1) "[a]ll necessary expenses incurred for" medical care, any non-medical remedial care, and any other professional health services; and (2) "[l]oss of earnings from work which the person would have performed had [s]he not been injured[.]"  N.Y. Ins. Law § 5102 (a)(1)-(2).  "Loss of earnings" is limited to $2,000.00 per month for up to three years following the accident. *Id.* at § 5102 (a)(2).  The payments an insurer makes to reimburse for Basic Economic Loss are called "First Party Benefits," and are calculated by deducting from the Basic Economic Loss: (1) 20 percent of lost earnings; and (2) any government disability benefits received.  *See*, N.Y. Comp. Codes R. & Regs. § 65-1.1; N.Y. Ins. Law § 5102 (b)(1)-(2); *See also*, *Pryce v. Progressive Corp.*, 2019 WL 8163424, at *1 (E.D.N.Y. Nov. 15, 2019) (noting that the

---

[1] For each cause of action, Plaintiff's allegations are asserted on behalf of herself and the putative class.

No-Fault Statute requires insurers to pay insureds First Party Benefits).

The parties dispute whether an insurer may apply the 20 percent deduction for lost earnings against the $50,000.00 policy limit for Basic Economic Loss when calculating First Party Benefits for an individual who, prior to her accident, earned over $2,000.00 per month. Plaintiff contends that because lost earnings are statutorily limited to $2,000.00 per month, where an insured earned more than $2,000.00 per month, the insurer is not permitted to further reduce her Basic Economic Loss by deducting 20 percent of lost earnings. *See*, Pl. Opp'n, 2. Thus, according to Plaintiff, Defendants violated the No-Fault Statute by offsetting a portion of her wages from the maximum First Party Benefits. *See*, Pl. Opp'n, 3. Defendants, on the other hand, assert that, regardless of the insured's monthly wages, the 20 percent deduction applies. *See*, Def. Mem., 2; Def. Reply, 1. As such, Defendants contend that they had the right to apply $3,554.79, which constitutes 20 percent of Plaintiff's gross lost wages up to $2,500.00 per month, against the $50,000.00 Basic Economic Loss limit. *See*, Def. Mem., 15.

The New York State Court of Appeals first addressed this question in *Kurcsics v. Merchants Mutual Insurance Company*, 49 N.Y.2d 451 (1980). When *Kurcsics* was decided, the No-Fault Statute capped benefits for lost earnings at $1,000.00, rather than $2,000.00, per month. *Id.* at 454-44. There, the plaintiff claimed $1,400.00 in lost wages, yet, his insurance provider paid him only $800.00 per month in lost wages, on the theory that First Party Benefits require a 20 percent deduction of the maximum statuary benefits of $1,000.00. *Id.* at 455. The plaintiff argued that the 20 percent deduction applied only to individuals whose lost earnings were less than the statutory maximum and that where, as in his case, lost earnings exceeded the statutory maximum, the 20 percent deduction was not applicable, and such individuals were entitled to recover the $1,000.00 statutory maximum for lost earnings. *Id.* at 456-57.

6

The Court of Appeals agreed with the plaintiff, holding that "an individual is entitled to actual lost earnings claimed less 20%, unless such reduced figure exceeds $1,000 per month, in which case such person would be entitled to a maximum of $1,000 due to the outer net limit imposed [by the No-Fault Statute]." *Id.* The court explained:

> [The Basic Economic Loss provision] provides that one of the components of basic economic loss is loss of earnings from work and further states, in unequivocal terms, that this amount shall not exceed one thousand dollars per month for not more than three years from the date of the accident causing the injury. Thus, it is abundantly clear that this provision contemplates recovery for loss of earnings up to $1,000 per month, and we would be remiss in reading the 20% deduction embodied in [the First Party Benefits provision] as rewriting [the Basic Economic Loss provision] to limit the maximum recovery to $800 per month for loss of earnings. If the Legislature had so intended, [the Basic Economic Loss provision] would limit recovery to $800 per month and not authorize, as it presently does, recovery up to one thousand dollars per month for loss of earnings. The 20% deduction should not be treated as taking away what benefits [the Basic Economic Loss provision] bestows for it remains a basic principle of statutory construction that a court will not by implication read into a clause of a rule or statute a limitation for which no sound reason can be found and which would render the clause futile.

*Id.* at 457-58 (internal quotation marks, citations, and alterations omitted).

This same question was addressed more recently in *Pryce v. Progressive Corporation*, 2019 WL 8163424 (E.D.N.Y. Nov. 15, 2019). As in the instant action, the *Pryce* plaintiff brought a putative class action against her vehicle insurance carrier, alleging violations of the No-Fault Statute and GBL § 349 and breach of her insurance policy, based on the insurer's purported miscalculation of First Party Benefits. *Id.* at *1. There, the plaintiff had submitted a claim for First Party Benefits, which included a claim for $3,306.77 per month in lost earnings for five months. *Id.* To calculate the plaintiff's First Party Benefits, the defendants accounted for $2,500.00 per month in lost earnings and subtracted 20 percent of this amount, or $500.00 per month, for five months from the $50,000.00 maximum Basic Economic Loss. *Id.* The court found that the defendants' calculation was improper and that they could not "offset 20% of [p]laintiff's claimed lost wages from her maximum First Party Benefits because the $2,000 statutory maximum

7

in lost wages benefits already limits [p]laintiff to receiving less than the maximum 80% of her claimed lost wages envisioned by the Legislature." *Id.* at *4. The court based its holding, in part, on its finding that *Kurcsics* "limited an insured individual's lost wage benefits to 80% of the individual's claimed lost wages or the statutory maximum, whichever is lower." *Id.* at *2. The court further explained that "[t]he No-Fault Statute does not operate to let [d]efendants benefit twice, once by limiting [p]laintiff's lost wages benefits to $2,000 per month and again by permitting [d]efendant[s] to offset $500 per month from [p]laintiff's maximum First Party Benefits." *Id.* at *3. Accordingly, the court denied the defendants' motion to dismiss. *Id.*

Defendants' reliance on *Normile v. Allstate Insurance Company*, 87 A.D.2d 721, 721 (3d Dep't. 1982), *aff'd*, 60 N.Y.2d 1003 (1983), and its progeny, is misplaced. *See*, Def. Mem., 10-14. *Normile* and its progeny stand for the general proposition that First Party Benefits deductions are credited toward the insurer's obligation to pay $50,000.00 in Basic Economic Loss. *See*, *Normile*, 87 A.D.2d at 721-22 ("The basic question presented is whether the statutory setoffs enumerated in [the No-Fault Statute] are to be deducted from basic economic loss up to $50,000, as was done by defendant, or whether the setoffs are to be deducted from actual economic loss so that the insurer is liable for a maximum payment of $50,000 . . . The statutory language is clear and unambiguous in its limitation of basic economic loss to $50,000."); *Balanca v. Geico Gen. Ins. Co.*, 13 Misc.3d. 90, 91 (App. Term 2d and 11th Jud. Dist. 2006) ("[I]t is settled that to the extent payments received by the injured person from, among other things, state disability insurance reduce the amount of lost earnings payable under Insurance Law § 5102(a)(2), such reductions are credited to the insurer and are used to deplete the amount of coverage available to pay basic economic loss benefits.").

However, Plaintiff does not dispute that First Party Benefits deductions are credited toward

the $50,000.00 maximum in Basic Economic Loss.  Neither *Normile*, nor the cases that follow address the central issue in this case, which is squarely addressed by *Kurcsics* and *Pryce* on facts similar to the case at bar.  Accordingly, Defendants' motion to dismiss the violation of the No-Fault Statute claim is denied.

**B.     Count II:  Breach of Contract**

Plaintiff alleges that Defendants breached the Policy by failing to comply with the No-Fault Statute.  *See*, Compl. ¶¶ 37-39.  The elements of breach of contract in New York are: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Martino v. MarineMax Ne., LLC*, 2018 WL 6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  The No-Fault Statute is "deemed to be part of [the Policy] as though written into it[.]" *Trizzano v. Allstate Ins. Co.*, 7 A.D.3d 783, 785 (2d Dep't. 2004) (internal quotation marks, citations, and alteration omitted); *See also*, *Security Mut. Life Ins. Co. of N.Y. v. Rodriguez*, 65 A.D.3d 1, 6 (1st Dep't. 2009) ("Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein[.]") (internal quotation marks and citation omitted).

As discussed above, Plaintiff adequately pleads a violation of the No-Fault Statute.  Accordingly, Plaintiff's breach of contract claim also survives Defendants' motion to dismiss.

**C.     Count III:  Violation of GBL § 349**

Plaintiff further asserts a claim pursuant to GBL § 349, alleging that Defendants misrepresented that:  (1) the Policy complies with New York law, including the No-Fault Statute; (2) Defendants are permitted under the No-Fault Statute to apply more than $2,000.00 of lost

9

earnings per month against the Basic Economic Loss, thereby "accelerating the exhaustion of Basic Economic Loss"; and (3) "Defendants charged a premium based upon the availability" of $50,000.00 in First Party Benefits, and then denied Plaintiff the full amount of First Party Benefits to which she was entitled.  Compl. ¶¶ 41-44.

GBL § 349 prohibits "'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting N.Y. Gen. Bus. Law § 349(a)).  To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff fails to satisfy the third element.  A monetary loss under GBL § 349 "must be independent of the loss caused by the alleged breach of contract."  *DiGangi v. Gov't Emps. Ins. Co.*, 2014 WL 3644004, at *7 (E.D.N.Y. July 22, 2014) (internal quotation marks and citation omitted).  Plaintiff alleges that she suffered damages "as a result of [D]efendants' misrepresentations[]" arising out of their non-compliance with the No-Fault Statute.  Yet, this injury arises out of "the exact causes and effects" Plaintiff alleges in her breach of contract claim, and, as such, is "insufficient to give rise to a [Section] 349 claim."  *See*, *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp.2d 290, 305 (S.D.N.Y. 2012) (holding that plaintiff had failed to allege injury under Section 349 because the purported damages "stem[med] from the alleged breach of contract") (citation omitted).  Plaintiff's failure to allege an injury caused by Defendants' allegedly deceptive acts that is independent of the injury caused by Defendants' alleged breach of contract warrants dismissal of Plaintiff's GBL § 349 claim.

**D.      Count IV: Declaratory and Injunctive Relief**

Finally, Plaintiff seeks an order declaring that Defendants must comply with the No-Fault Statute and enjoining Defendants "from reducing Basic Economic Loss coverage for wages by more than [$2,000.00] per month[.]" Compl. ¶¶ 48-49. As an initial matter, the Court notes that while Plaintiff's request for declaratory and injunctive relief is styled as a cause of action, "[d]eclaratory judgments and injunctions are remedies, not causes of action." *In re Edgewell Pers. Care Co. Litig.*, 2018 WL 7858623, at *11 (E.D.N.Y. Sept. 4, 2018) (internal quotation marks and citations omitted).

In requesting a declaratory judgment, Plaintiff urges the Court to require Defendants to comply with the No-Fault Statute, something they already are required to do. *See*, *Patchen v. Gov't Emps. Ins. Co.*, 759 F. Supp.2d 241, 251 (E.D.N.Y. 2011) (dismissing cause of action for declaratory relief that sought to enforce conduct which was already mandated by statute); *See also*, *DiGangi*, 2014 WL 3644004, at *8 (declining to issue declaratory judgment where doing so "would not finalize the controversy between the parties, clarify the legal issues involved, or serve any other useful purpose[]") (citation omitted). The Court declines to "repeat this statutory directive[]." Accordingly, Defendants' motion to dismiss the declaratory judgment claim is granted.

In requesting injunctive relief, Plaintiff must establish "a likelihood of success on the merits of [her] case" and "a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007) (citation omitted). Establishing irreparable harm is "perhaps the single most important prerequisite" for obtaining injunctive relief, and a plaintiff must establish such harm "before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)

11

(internal quotation marks, citations, and alteration omitted).  To establish irreparable harm, the plaintiff "must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."  *Id.* (internal quotation marks and citation omitted).

In certain circumstances, irreparable harm may be presumed.  *See*, *Awosting Reserve LLC v. Chaffin/Light Assocs. Co.*, 296 F. Supp.2d 470, 473, n.1 (S.D.N.Y. 2003) (collecting cases).  For instance, where "a statute authorizes the government to seek preliminary injunctive relief but does not specifically require proof of irreparable harm, no such showing is required."  *United States v. Narco Freedom, Inc.*, 95 F. Supp.3d 747, 754 (S.D.N.Y. 2015) (citations omitted).  The No-Fault Statute is not such a statute, and, under the circumstances presented here, there is no other basis to presume irreparable harm.

Plaintiff fails to allege what harm she would incur in the absence of an injunction.  Plaintiff has not made the requisite showing that money damages would be an inadequate remedy should she ultimately prevail on the merits.  Accordingly, Plaintiff's request for injunctive relief is denied.  *See*, *Awosting Reserve LLC*, 296 F. Supp.2d at 473 (denying injunctive relief where court found no basis to hold that plaintiff would not be compensated adequately with an award of money damages).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied with respect to the No-Fault Statute and breach of contract claims and granted the GBL § 349 claim and requests for declaratory and injunctive relief.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2020

/s/
DORA L. IRIZARRY
United States District Judge