UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
MARY LANZILLOTTA, suing individually on :
her own behalf and representatively on behalf of :
a class of plaintiffs similarly situated,          :
                                                    :
                              Plaintiff,            :          **OPINION AND ORDER**
                                                    :           **19-cv-1465(DLI)(JRC)**
              -against-                              :
                                                    :
GOVERNMENT EMPLOYEES INSURANCE :
COMPANY, GEICO GENERAL INSURANCE :
COMPANY, GEICO INDEMNITY            :
COMPANY, GEICO CASUALTY             :
COMPANY, GEICO ADVANTAGE            :
INSURANCE COMPANY, GEICO CHOICE    :
INSURANCE COMPANY, GEICO SECURE    :
INSURANCE COMPANY, GEICO COUNTY    :
MUTUAL INSURANCE COMPANY, GEICO    :
INSURANCE AGENCY INC.,              :
                                                    :
                              Defendants.           :
--------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On March 13, 2019, Plaintiff Mary Lanzillotta ("Plaintiff") commenced this putative class

action against Government Employees Insurance Company, GEICO General Insurance Company

("GEICO General"), GEICO Indemnity Company, GEICO Casualty Company, GEICO

Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance

Company, GEICO County Mutual Insurance Company, and GEICO Insurance Agency Inc.

(collectively, "Defendants"), seeking damages and declaratory and injunctive relief for

Defendants' alleged systemic underpayment of benefits to individuals injured in automobile

accidents and insured by Defendants.  *See*, Compl., Dkt. Entry No. 1.

Plaintiff asserted three causes of action: (1) violation of the Comprehensive Motor Vehicle

Reparations Act, N.Y. Ins. Law §§ 5101-09 (the "No Fault Statute"); (2) breach of contract; (3)

violation of New York General Business Law § 349 ("GBL § 349"); and included a request for declaratory and injunctive relief. *Id*. at ¶¶ 33-49. On May 24, 2019, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See*, Notice of Mot., Dkt. Entry No. 11. On September 30, 2020, the Court denied Defendant's motion to dismiss with respect to the No Fault Statute and breach of contract claims, but granted it as to the GBL § 349 claim and requests for declaratory and injunctive relief. *See*, Memorandum & Order dated September 30, 2020 ("M&O"), Dkt. Entry No. 23.

On February 4, 2022, Plaintiff moved to certify a class of insured individuals whose First Party Benefits coverage with Defendants purportedly were exhausted prematurely on or after March 13, 2013 (the "Motion"). *See*, Mot. for Class Cert. and Pl.'s Mem. of Law in Supp. ("Pl.'s Mot."). Dkt. Entry No. 46. On March 21, 2022, Defendants opposed the Motion by asserting that both Plaintiff and the putative class members lack Article III standing, individual issues predominate common questions, and there are superior methods of adjudicating Plaintiff's claims other than by a class action. *See*, Defs.' Mem. in Opp. ("Defs.' Opp."), Dkt. Entry No. 47. On April 4, 2022, Plaintiff replied. *See*, Pl.'s Reply ("Pl.'s Reply"), Dkt. Entry No 48.

For the reasons set forth below, Plaintiff's motion for class certification pursuant to Rule 23(b)(3) is granted as to the breach of contract claim against GEICO General Insurance only, denied as to the No Fault Statute violation claim, which is dismissed, and this action is dismissed against all remaining defendants because Plaintiff lacks standing.

## BACKGROUND

On August 27, 2016, Plaintiff was injured in a car accident. Compl. ¶ 23. Plaintiff alleges that, at the time of the collision, she was insured under an automobile insurance policy issued by Defendants (the "Policy"). *Id*. at ¶ 22. The Policy, in accordance with the requirements of the

"No Fault Statute", provided coverage of up to $50,000.00 in "Basic Economic Loss" and $5,000.00 in "Med Pay" for a total of $55,000.00. *Id*. at ¶ 25.

Following the accident, Plaintiff submitted a claim for "First Party Benefits" to Defendants. *Id*. at ¶ 23. Defendants issued Plaintiff a claim payment of $51,445.21, which included: (1) $35,019.38 in First Party medical benefits; (2) $14,219.15 in First Party wage benefits over a period of seven months; and (3) $2,206.68 in "Replacement Benefits." *Id*. at ¶ 26.

On April 18, 2017, having issued $51,445.21 in First Party Benefits, Defendants advised Plaintiff that she had exhausted her Basic Economic Loss and Med Pay coverages of $55,000.00. *Id*. at ¶ 27. Defendants reached this conclusion by accounting for $2,500.00 in lost earnings per month, and then subtracting from the total $55,000.00 in Basic Economic Loss and Med Pay, 20 percent of such lost earnings ($500.00) for the seven months that Plaintiff received First Party wage benefits (for a total deduction of $3,500.00). *Id*. at ¶¶ 28, 29. Plaintiff asserts that Defendants, instead, should have accounted for only $2,000.00 in lost earnings per month and not applied the 20 percent deduction. *Id*. at ¶¶ 3-5, 28. Plaintiff contends that Defendants' purportedly improper calculation of First Party Benefits deprived Plaintiff of $3,554.79 in Basic Economic Loss benefits to which she was entitled. *Id*. at ¶ 30.

## LEGAL STANDARD AND ANALYSIS

### I. Article III Standing

#### A. Legal Standard

To establish a case in controversy for which relief may be granted in an Article III court, a plaintiff must have standing. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Article III standing in a class action requires a showing that "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *NECA-IBEW Health & Welfare*

*Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (internal quotation marks and citation omitted).   A plaintiff has standing when: (1) she has suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury likely was caused by the defendant; and (3) judicial relief can redress that injury.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).   An injury in fact that confers Article III standing exists after a plaintiff "show[s] that he or she suffered an invasion of a legally protected interest that is concrete and particularized." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018).

A plaintiff's burden in establishing Article III standing becomes heavier as a case proceeds through the successive stages of litigation.  *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).   Accordingly, at the class certification stage, the named plaintiff must demonstrate standing by a preponderance of the evidence.  *Calvo v. City of New York*, 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

### B.     Article III Standing Against GEICO General

Plaintiff alleges that she received less than what she was promised in insurance coverage due to Defendants' statutory violation and breach of contract.  Compl. ¶ 27.   Specifically, she contracted for $55,000.00 in insurance coverage and was provided $51,445.21 in First Party Benefits before policy exhaustion.  *Id.* at ¶¶ 22-23, 25, 27.   As the Court indicated in its M&O, the No Fault Statute does not allow insurers to limit an insured party's lost wage benefits to $2,000.00 per month and again offset $500.00 per month from the maximum First Party benefits.  *See*, M&O

at 6-9.  Plaintiff contends that this is what happened here resulting in a $3,554.79 loss.  Pl. Mot. at

8; Compl. ¶¶ 28-30.  The record lends support for this contention.  *See*, Fitzpatrick Decl. Ex. 2, at

41-42, 44-45, 72-74, 77-79; *See also*, Mahoney Decl. ¶¶ 10-12, 17.

Defendants present a host of reasons why Plaintiff is not injured and lacks Article III

standing, none of which are convincing.  Defs.' Opp. at 16-19.  Defendants fail to recognize the

actual bases for Plaintiff's injury, to wit, the deprivation of rights under the No Fault Statute and

breach of contract.  *See*, Pl. Mot. at 8; *See also*, Pl.'s Reply at 6-7.  Plaintiff contracted for

$55,000.00 worth of insurance coverage and Defendants notified her that she had exhausted that

coverage before its full realization.  Compl. ¶ 29.  Economic injuries may establish standing, and

courts in this Circuit consistently have held that "a plaintiff is injured, suffering an ascertainable

loss, when [s]he receives less than what [s]he was promised."  *See*, *In re Bayer Corp. Combination

Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp.2d 356, 377 (E.D.N.Y. 2010) (citation

omitted).  Thus, "premature exhaustion and consequent denial of a statutory and contractual right

constitutes a cognizable injury sufficient to confer Article III standing."  *Pryce*, 2022 WL 969740,

at *4.

Notably, this injury is traceable to the entity that administered Plaintiff's claims, which is

GEICO General.  Am. Ans. ¶¶ 22-23, 26; Mahoney Decl. ¶¶ 3,4.  Plaintiff's injury also is

redressable through an order directing payment of any overdue benefits plus interest and damages.

Compl. ¶¶ 35, 40.  Accordingly, Plaintiff has demonstrated Article III standing against GEICO

General as the entity that issued and administered her policy.  *See,* Section I.D. below.

### C.    Putative Class Members' Injury in Fact

Defendants also contend that the class cannot be certified since it will contain members

who lack Article III standing.  Defs.' Opp. at 19-20.  However, "the Supreme Court and the Second

Circuit have recognized that the existence of uninjured plaintiffs does not bar class certification." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 16 (E.D.N.Y. 2020) (collecting cases). Nonetheless, Plaintiff's theory of liability is premised upon Defendants having utilized the same improper formula for all policy holders that resulted in unlawful deductions and premature policy exhaustion. *See*, Pl.'s Mot. at 8, 12-13; *See also*, Pl.'s Reply at 9, 11-12. As discussed above, the resulting effect establishes an injury in fact and the Court is satisfied that the class definition captures those who suffered this injury.

> **D.    Standing as to All Remaining Defendants**

Plaintiff maintains that, even though GEICO General issued and administered her insurance policy, she has standing to sue every named defendant because all GEICO entities utilized the same [Atlas] system to subject each putative class member to an unlawful deduction in coverage and these entities shared significant resources. Pl. Reply at 10-13. However, the Second Circuit has rejected a similar theory of standing. *See*, *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62, 65 (2d Cir. 2012). In *Mahon*, the plaintiff brought a putative class action against three insurance agencies affiliated with the same corporate parent despite the fact that only one of those entities had injured her by selling her misleading insurance. *Id.* at 60-61. The plaintiff in *Mahon* argued that because these companies were connected, *i.e.*, "share[d] resources in Connecticut, coordinated in drafting their premium rate schedules, and operate[d] in the same manner with respect to overcharging Connecticut borrowers in refinance transactions," she could represent those injured by all three companies despite having been injured by only one company. *Id*. at 61.

Although *Mahon* involved affiliated entities and not the parent corporation, the Circuit's holding is applicable here because a district court "first [must] determine that the party plaintiff was actually injured *by each of the named defendants* before proceeding to the Rule 23 inquiry."

*Langan v. Johnson & Johnson Consumer Companies*, *Inc.*, 897 F.3d 88, 96 fn. 3 (2d Cir. 2018) (citing *Mahon*, 683 F.3d at 64) (emphasis added).  "Claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff."  *Id*. at 94.

The parties agree that Plaintiff held an insurance policy under policy number 4412421010. Compl. ¶ 22; Am. Ans. ¶ 22.  Defendants note that only GEICO General issued and administered the Policy.  *See*, O'Mahoney Decl. ¶¶ 3-19.  When defendants proffer evidence beyond the pleadings to challenge standing, the plaintiff must provide evidence of her own to controvert defendants' assertions.  *See, Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 57 (2d Cir. 2016).

Plaintiff contends that she has standing against all defendants since they utilize the same improper formula to assess recoverable benefits across all New York insurance policies and the claims department is operated collectively by Government Employees Insurance Company, GEICO Casualty Company, GEICO Indemnity Company, and GEICO General in the same building.  Pl's Reply at 10-13.  Although the record lends support for these assertions, Plaintiff fails to show that any defendant other than GEICO General handled her insurance claims and correspondingly injured her by reducing her policy coverage.  Moreover, the Court is unconvinced that names and shared addresses appearing on insurance forms can controvert Defendants' evidence that only GEICO General administered Plaintiff's claims.[1]  *See*, O'Mahoney Decl. Ex. A; Marschhausen Decl. Ex. 14.

---

[1] For example, the claim denial letters provide a generic insurer name, but also include the underwriter's unique National Association of Insurance Commissioners ("NAIC") number, to wit, 35882.  O'Mahoney Decl. at Ex. C, D, and E.  The Court takes judicial notice that the New York State Department of Financial Services' insurance company portal denotes that NAIC Number 35882 is registered to GEICO General.  *See, Leger v. Kalitta*, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) (explaining that courts may take judicial notice of "documents retrieved from official government websites" or other government records from such websites).

Plaintiff's reliance on *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158 (D.MD. 2008), decided by a court of concurrent jurisdiction from outside this Circuit, is misplaced.  The *Wu* court held that the plaintiff had standing to sue the corporate parent and two additional subsidiaries with whom the plaintiff did not have an insurance policy because the plaintiff alleged and presented evidence that the corporate parent directed its corporate network to utilize the same manual to defraud its members.  *Id*. at 166-67, fn 9.  While the Second Circuit in *Carver v. City of New York*, 621 F.3d 221, 226–27 (2d Cir. 2010) held that standing to sue another entity can be substantiated when evidence supports the allegation that the defendant's actions had a determinative or coercive effect upon the action of someone else who directly caused the claimed injury, Plaintiff presents no evidence to show which entity was responsible for creating the allegedly improper formula or for requiring GEICO General to utilize it.  *Pryce v. Progressive Corp., et. al.*, 2022 WL 1085489, at *10-11(E.D.N.Y. Feb. 17, 2022), *adopted in relevant part by* 2022 WL 969740 at *4 (E.D.N.Y. Mar. 31, 2022)(rejecting identical standing argument made here in a nearly identical case, finding that the *Pryce* plaintiff only had standing against the entity that issued and administered her policy).  Here, Plaintiff only assumes, without any supporting evidence, that the formula was utilized at the behest of a parent company.[2]   Pl.'s Reply at 12.

For the foregoing reasons, the Court finds that Plaintiff has failed to establish Article III standing against Government Employees Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, GEICO County Mutual Insurance Company, and

---

[2] Defendants' corporate disclosure shows that GEICO Corporation wholly owns Government Employees Insurance Company while Government Employees Insurance Company wholly owns GEICO General.  *See*, Corporate Disclosure, Dkt. Entry No. 10 at 1-2.  Contrary to Plaintiff's contention, GEICO Corporation is not a party to this action.  *See*, Compl.

GEICO Insurance Agency Inc.  Accordingly, these defendants are dismissed from this action and the following analysis refers only to GEICO General, the remaining defendant.

## II.      Class Actions Under Federal Rule of Civil Procedure 23

### A.      Legal Standard

In order to certify a putative class, courts must insure that the requirements of Federal Rule of Civil Procedure 23 have been met.  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010).  First, the moving party must show that the four criteria of Rule 23(a) are satisfied, to wit, that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001), cert. denied, 536 U.S. 917 (2002).

If these requirements have been met, the moving party then must demonstrate that she is entitled to certification under Rule 23(b).  As relevant here, Rule 23(b)(3) permits class certification when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). In this Circuit, the moving party also must satisfy Rule 23's implied requirement of ascertainability where "a proposed class is defined using objective criteria that

establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017).

Courts construe Rule 23 liberally in favor of granting, rather than denying, class certification since a class always can be modified, divided, or refined for trial. *See, Belfiore v. Procter & Gamble Co*., 311 F.R.D. 29, 60 (E.D.N.Y. 2015). However, a court must conduct a "rigorous analysis" to ensure that the proposed class satisfies all requirements of Rule 23(a) and Rule 23(b) before certifying a class. *See, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Although this rigorous analysis may overlap with the merits of the plaintiff's claims, "merit questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).

## B.    Ascertainability

The Second Circuit has held that Rule 23 implicitly requires that class membership be ascertainable through objective criteria that ensures definitive boundaries. *In re Petrobras Secs.*, 862 F.3d at 257; *Pryce*, 2022 WL 969740, at *7. This straightforward standard ensures that classes are administratively feasible and will not require mini-hearings on the merits of each case to determine whether a particular individual is a member of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015) (citations omitted)

GEICO General places great weight on this requirement contending that Plaintiff relies upon data that "lacks the information necessary to determine whether each putative class member has sustained an injury" and would prompt mini-hearings to determine injury. Defs.' Opp. at 29-30. This argument is flawed since it appears that the reduction formula was applied uniformly across New York insurance policies. *See*, Fitzpatrick Decl. Ex. 2 at 41-42, 44-45; 64-65, 67. As

described above, GEICO General would have injured insured parties by taking an unentitled credit that caused premature exhaustion of statutory benefits and prevented policy realization.

The Court concurs with Plaintiff that the requisite information to identify putative class members is available to GEICO General since they are required to provide a denial of claim form that lists the reasoning for denying a claim.[3]  *See*, 11 N.Y.C.R.R. §65-3.8(c)(1).  Notably, apparently GEICO General already has compiled a spreadsheet that identifies individuals with insurance benefits that have been exhausted since March 13, 2013.  Fitzpatrick Decl. Ex. 1 at 9-13.  Moreover, any burden in specifically identifying class members does not detract from the objective definition that identifies them.  *Pryce*, 2022 WL 1085489, at *13.

Finally, while the proposed class definition provides sufficiently objective criteria to establish definitive boundaries and will not prompt mini-hearings, the class definition requires modification to ensure exactness.  Courts may modify the definition of proposed classes to correct any deficiency or necessitate precision.  *See*, *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016)(citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)).  First, the only defendant for whom Plaintiff's injury is traceable is GEICO General.  Furthermore, it appears that GEICO General utilizes gross earnings when calculating coverage eligibility.  *See*, Fitzpatrick Decl. Ex. 1 at 34-35; *See also*, O'Mahoney Decl. ¶¶ 10-12.  The class definition should reflect this.  Moreover, 11 NYCRR § 65 limits those to whom this kind of insurance coverage applies.  Accordingly, the class definition is modified as follows:

> All *"Eligible Injured Persons," as that term is defined by 11 NYCRR §§ 65-1.1–65-1.3, covered under a policy of insurance issued or administered* by GEICO General Insurance Company, subject to the provisions of Insurance Law § 5102, who *earned gross monthly wages* in excess of two thousand dollars per month at *any point during the period in which they were covered*, who have submitted First Party Benefit claims to and received payment from *GEICO General Insurance Company* for First Party Benefits that included claims for lost wages, and which,

---

[3] GEICO General utilizes a NF10 denial of claim form.  Fitzpatrick Decl. Ex. 2 at 63; Fitzpatrick Decl. Ex. 8.

after paying at least one month of First Party wage benefits, *GEICO General Insurance Company* claim*ed* fully exhausted coverage on or after March 13, 2013. Excluded from the Class are the defendant company; any entity that has a controlling interest in the defendant company; current or former directors, officers and counsel of the defendant company; and any *Eligible Injured Persons* who received full compensation under the applicable insurance policy.

Subject to the changes described above, the Court finds that the class is ascertainable.

### C.    Requirements of Federal Rule of Civil Procedure 23(a)

#### 1.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires a class to be so numerous that joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Plaintiff bears the burden of showing that joinder is impracticable, but is not required to provide evidence of exact class size or the identities of class members to demonstrate numerosity.  *See, Robidoux*, 987 F.2d at 935.  Accordingly, "in assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class." *Chime v. Peak Sec. Plus, Inc.* 137 F. Supp.3d 183, 207 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).

Numerosity is presumed when there are at least forty members in the proposed class. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  A class may be sufficiently numerous based upon the analysis of claims files.  *See*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 299 (E.D.N.Y. 2013).  Here, utilizing Defendants' insurance claim data, Plaintiff's experts initially identified over 1,800 putative class members whose benefits had been exhausted .  *See*, Fitzpatrick Decl. Ex. 5 at 7, 10.  Upon request of the Court, Plaintiff clarified that, of these putative class members, 843 had policies issued and administrated by GEICO General during the statutory period.  *See*, Status Report dated March 17, 2023, Dkt. Entry No. 49.

GEICO General contends that Plaintiff's experts only assumed that putative class members suffered economic harm and, as such, Plaintiff presents speculative evidence regarding class size. Defs.' Opp. at 27-28.  As outlined above, each putative class member would have suffered concrete, economic harm since s/he received less than what s/he contracted for from GEICO General.  Based on the foregoing, the Court is satisfied that the putative class is not speculative as a preponderance of the evidence demonstrates that there are over 40 qualifying class members. *See*, Fitzpatrick Decl. Ex. 5.  Therefore, Plaintiff has satisfied the numerosity requirement.

### 2.      Commonality – Rule 23(a)(2)

Commonality requires the existence of questions of law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  A single common question will suffice.  *Dukes*, 564 U.S. 338 at 359 (2011).  Accordingly, the moving party must demonstrate that class claims "depend upon a common contention" that "[are] capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. at 350.  Moreover, "what matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id*.  (citation omitted).  "[W]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Johnson v. Nextel Communications, Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (citation omitted).

Plaintiff contends that commonality is satisfied because she, along with every putative class member, had their insurance policies prematurely exhausted through GEICO General's uniform application of its reduction formula.  *See*, Pl.'s Mot. at 13-14.  GEICO General does not contest the premise of commonality, but instead asserts that individual issues predominate class-wide

proof.[4]  Defs.' Opp. at 22-25.  The Court is satisfied that the propriety of GEICO General's uniform practice that caused New York policyholders to suffer premature exhaustion establishes a course of action common to all class members and raises common questions that are "apt to drive resolution of the litigation."  *See*, *Pryce*, 2022 WL 969740, at *6 (citing Fed. R. Civ. P. 23(a)(2)).  Accordingly, Plaintiff has satisfied Rule 23's commonality requirement.

### 3.  Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is found "'when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp.3d 95, 121 (E.D.N.Y. 2019) (quoting *Robidoux,* 987 F.2d at 936).  Minor variations that relate to underlying individual claims do not preclude typicality.  *Robidoux*, 987 F.2d at 936–37.

However, while "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (internal quotation marks and citations omitted).  Ultimately, this requirement tends to merge with the commonality prong since both are meant to ensure that a class action is economical and that the claims of class members are "so interrelated that the interests of the class members will be

---

[4]  Generally, the subject of individualized issues predominating class-wide proof falls under the purview of Federal Rule of Civil Procedure 23(b)(3).  *See, Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015).  Accordingly, the subject of predominating individualized issues is addressed below.  *See, infra*, Section II.D.1.

fairly and adequately protected in their absence." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).

In arguing against typicality, GEICO General erroneously contends that Plaintiff is atypical and fails to represent the purported class since she lacks Article III standing. Defs.' Opp. at 28. As discussed above, the Court has rejected Defendant's standing argument. The Court further finds that Plaintiff's claims not only arise from the same course of events, but rest on similar legal arguments regarding the premature exhaustion of insurance policies through GEICO General's basic economic loss reduction formula. Finally, GEICO General does not assert any unique defense that threatens to become the focus of the litigation. *See*, *Baffa*, 222 F.3d at 59. Therefore, Plaintiff has satisfied Rule 23(a)(3)'s typicality requirement.

### 4.      Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) requires that the named plaintiff adequately represent the class. Thus, Plaintiff must demonstrate that: (1) her interests are not antagonistic to the interests of putative class members; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, 502 F.3d 91, 99 (2d Cir. 2007). The Court does not discern any conflict of interest between Plaintiff and putative class members. Plaintiff has acknowledged her obligations to the class asserted a willingness to prosecute the instant matter on behalf of the class. Pl.'s Mot. at 15. Furthermore, Plaintiff's attorneys' qualifications, experience, and ability to conduct the litigation on behalf of the class has been supported amply by Plaintiff, thus satisfying the adequacy of representation requirement. *Id*. at 18; Fitzpatrick Decl. Exs. 6, 7.

**D.     Requirements of Federal Rule of Civil Procedure 23(b)**

Upon determining that Plaintiff has complied with Rule 23(a), the Court then must determine whether she has satisfied the requirements of Rule 23(b), which governs the types of class actions. As Plaintiff's remaining claims involve individualized monetary relief, the appropriate mechanism for analyzing this putative class is under Rule 23(b)(3). *See, Dukes*, 564 U.S. at 362-63. Pursuant to Rule 23(b)(3), a class action may be maintained when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.     Predominance of Common Questions of Law and Fact**

Common questions fail to predominate when there is "some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair." *Amgem Inc. et al. v. Ct. Retirement Plans and Trust Funds*, 568 U.S. 455 (2013). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)(quoting *Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*, 729 F.3d 108, 118 (2d Cir. 2013)). The decisive question regarding predominance is whether common issues can be tried on a class-wide basis or whether these common issues are subverted by individual questions. *See, Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). This requires courts to scrutinize and evaluate the interplay between common and individualized questions. *Id*.

"The predominance inquiry should focus on the liability issue — if the liability issue is common to the class, common questions are held to predominate over individual questions." *Pryce*, 2022 WL 969740, at *7 (citing *In re Nigeria Charter Flights Cont. Litig.*, 233 F.R.D. 297, 304 (E.D.N.Y. 2006)(internal quotation marks and citations omitted)).   Thus, courts generally evaluate predominance by considering the elements of each cause of action and whether these causes of actions are susceptible to class-wide proof over that of individualized proof.  *See, Pryce*, 2022 WL 1085489, at *18, *adopted in relevant part by,* 2022 WL 969740 (E.D.N.Y. Mar. 31, 2022).  Here, the remaining claims are for a violation of the No Fault Statute and breach of contract.

The No Fault Statute provides a cause of action for overdue benefits.  *See*, N.Y. Ins. Law § 5106(a).  An insurer's liability for an overdue benefit, based upon its uniformly miscalculated claims, does not come to fruition until "a claimant 'supplies proof of the fact and amount of loss sustained.'"  *Id.*, at *19 (citing N.Y. Ins. Law § 5106(a).  Thus, a claimant's cause of action arises upon receiving the denial of a claim.   As the *Pryce* court properly reasoned in a case nearly identical to this one as to both the facts and legal issues presented, a cause of action under the No Fault Statute requires an individualized, fact intensive inquiry to determine the existence, timing, and amounts of overdue benefits for each putative class member.  *Id.*  Thus, the individualized nature of these determinations under the No Fault Statute predominates generalized, class-wide proof militating against class certification for this cause of action.  Accordingly, class certification as to Plaintiff's cause of action under the No Fault Statute is denied.

However, the same individualized attention is not congruent with breach of contract claims. A breach of contract claim requires a plaintiff to establish: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's

breach." *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). GEICO General contends that the causation element for the breach of contract claims prompts individualized questions that predominate generalized proof because an examination of individual claims is required to assess whether any injury resulted from GEICO General's conduct. Defs.' Opp. at 24-26. This argument fails because there is no dissimilarity among class members regarding the cause of each class member's injury.

As in *Pryce*, this Court is presented with commonly applied, boilerplate insurance policies where an insurance company, here, GEICO General, allegedly utilized a particular formula and uniformly accelerated its own credit towards policy exhaustion against class members in violation of the No Fault Statute. *See, Pryce*, 2022 WL 1085489, at *20. This Court concurs with the *Pryce* court that the systematic acceleration of policy exhaustion for class members earning more than $2,000.00 per month in violation of the No Fault Statute, as a matter of law, would establish a breach of every class member's contract. *Id.* As discussed above, each putative class member would have suffered an injury by receiving less insurance coverage than she bargained for with GEICO General. If GEICO General "is held liable for breach of contract . . ., that liability can be generalized across the class because every class member [purportedly] was subject to the same Basic Economic Loss offset formula" and advised by GEICO General that their coverage had been exhausted. *Pryce*, 2022 WL 969740, at *7. As the same theory of liability and course of action applies to each class member, the process for identifying class members and determining legal and factual issues for breach of contract claims will not predominate over common questions of fact and legal liability. *Id.*

Finally, the resulting level of damages fails to generate individualized issues that predominate generalized proof. A varying degree of harm across the class does not constitute a

fatal difference since "liability does not require an exact amount of damages." *Id*. at \*8 (citing *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (noting that "[c]ommon issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to class wide proof.")); *See also*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124, 130 (2d Cir. 2013)(finding class certification proper where damages differed among individuals, but contracts were uniform and damages could be calculated through a class wide formula). Accordingly, class certification as to the breach of contract claims is proper.

### 2. Superiority of Class Action Litigation

A plaintiff seeking class certification must show that class action litigation is superior to other available methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Under this rule, pertinent factors courts should consider include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

Plaintiff contends that no class member has a special interest in controlling prosecution of his or her individual claim since each class member was subjected to the same conduct. Pl.'s Mot. at 17. Moreover, the Court has no evidence before it to suggest that any members of the proposed class have commenced other litigation nor has any party alleged that this forum is undesirable. Furthermore, the Court does not discern any manageability concerns that would prevent class certification. GEICO General's contention that issues of standing and liability foreclose class action as the superior method of adjudicating the controversy is unconvincing and, to the extent

this same contention has been considered as to the other Rule 23 class action certification requirements, it has been rejected.

Finally, class actions under Rule 23(b)(3) may be superior when they facilitate redressability through aggregated recoveries that will comport with the devoted costs and resources, such as attorney labor.  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130. "The possible burden of calculating class members' damages would be far outweighed by the time and resources necessary to conduct hundreds of isolated proceedings in which the facts and questions of liability would need to be established on behalf of each individual plaintiff."  *Pryce*, 2022 WL 969740, at *9.  Moreover, the relatively small amount of damages that each class member independently may recover from GEICO General supports a class action versus costly independent litigation.  *See*, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997)("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Accordingly, a class action is the superior method to adjudicating the controversy in this case.

### III.    Appointment of Class Counsel under Rule 23(g)

Upon certifying a class, the Court is required to appoint class counsel taking into consideration: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The court also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The Court is satisfied that these requirements are met here.  First, Plaintiff contends that "counsel identified the claims asserted in this case."  Pl.'s Mot. at 18.  Next, attorney declarations submitted in connection with the Motion substantiate each one's handling of complex litigation and claims brought in connection with violations of New York's No Fault Statute.  Fitzpatrick Decl. Exs. 6, 7.  Finally, the attorneys attest to committing the requisite resources.  *Id*. Accordingly, the Court finds that these attorneys are qualified to serve as class counsel.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for class certification is granted as to her breach of contract claim against Defendant GEICO General and denied as to the No Fault Statute violation claim, which is dismissed.  In addition, this action is dismissed as to all the other defendants, *i.e.*, Defendants Government Employees Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, GEICO County Mutual Insurance Company, and GEICO Insurance Agency Inc. as Plaintiff lacks standing.

SO ORDERED.

DATED:      Brooklyn, New York
            March 25, 2023


                        _____/s/_____
                            DORA L. IRIZARRY
                        United States District Judge